```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ANDRZEJ OSTROWSKI,                             :
                                               :
                         Plaintiff,            :           **MEMORANDUM & ORDER**
                                               :
         -against-                             :           07-CV-3977 (DLI) (VVP)
                                               :
AMERICAN SAFETY INDEMNITY                      :
COMPANY,                                       :
                                               :
                         Defendant.            :
------------------------------------------------------------ x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Andrzej Ostrowski initiated this action against defendant American Safety Indemnity Company ("American") seeking to collect the amount due under a settlement agreement and Confession of Judgment entered into with American's insured, Hi-Tower Contractors, Inc. ("Hi-Tower"). Before the court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons set forth below, the court grants plaintiff's motion in part and denies defendant's motion in its entirety.

**I.    Background**

The Congregation Chasidei Belz of Boro Park, Inc. ("Congregation") was conducting renovation work on a building located at 50-15 15th Avenue in Brooklyn, New York, during the summer of 2003. The Congregation employed Hi-Tower to act as either a "general contractor" or "construction manager" at the building site. (*Compare* Pl.'s Local Rule 56.1 Stmt. in Supp. of Summ. J. Mot. ("Pl.'s 56.1 Stmt.") at ¶ 8, *with* Def.'s Local Rule 56.1 Stmt. in Opp'n to Summ. J. Mot. ("Def.'s 56.1 Stmt.") at ¶ 8.) The ENY Mechanical Corp. ("ENY"), of which Ostrowski was an employee, was hired (by either Hi-Tower or the Congregation) to perform plumbing work at the construction site. (*Compare* Pl.'s 56.1 Stmt. at ¶ 9, *with* Def.'s 56.1 Stmt. at ¶ 9.) On

1

August 29, 2003 Ostrowski was severely injured in a fall from scaffolding in the course of his employment at the construction site. (Kovner Aff. Ex. B at 42-3, 73.)

On September 21, 2003, Ostrowski brought an action in New York Supreme Court, Kings County against Hi-Tower, among others, to recover for the bodily injuries he sustained from the fall. On or about January 28, 2004, Ostrowski's attorney served a copy of the Summons and Verified Complaint upon Apex Insurance Managers ("Apex"), the authorized agent/representative for Hi-Tower's insurance carrier, American. (Dachs Aff. Ex. K.) On March 2, 2004, Apex consultant Eugene Chang conducted a preliminary evaluation of the case and noticed potential coverage issues regarding the Breach of Representations and Warranties Endorsement ("Warranty") section of Hi-Tower's insurance policy. (Dachs Aff. Ex. M.) The pertinent provision of the policy reads:

1. The Named Insured requires that all contractors maintain commercial general liability insurance issued by an "A" rated or better domestic carrier on the following items:

    a. Limits of insurance equal to or greater than the limits provided by this policy;
    b. Coverage at least as broad as the insurance on this policy;
    c. Contractual liability coverage, including but not limited to tort liability assumed in a written contract; and
    d. Coverage for the Named Insured as an additional insured.

(Dachs Aff. Ex. J at 128.) At some point, Chang noticed the possibility that Hi-Tower had not been named as an "additional insured" on ENY's policy pursuant to the requirements of the Warranty. (Dach's Aff. Ex. M.) Consequently, Apex issued a disclaimer notice to Hi-Tower on April 23, 2004, denying coverage for Hi-Tower's failure to comply with the Warranty, but offering to provide a defense to the state court action. (Dachs Aff. Ex. Q.) Subsequently, Apex enlisted the services of attorney Lewis Silverman to defend Hi-Tower in the action. (Dachs Aff. Ex. L.)

Prior to the commencement of the trial, Ostrowski and Hi-Tower reached a settlement agreement ("agreement") in which Hi-Tower agreed to pay Ostrowski $495,000 and execute a Confession of Judgment for that amount. Additionally, Hi-Tower assigned all of its rights under the policy to Ostrowski so that he "might obtain payment of the judgment from American Safety." (Dachs Aff. Ex. CC at ¶ 5.) As part of the agreement, Ostrowski agreed not to execute the judgment against Hi-Tower or to enter the judgment for one year following its execution. (*Id.* at ¶ 11.)

On September 24, 2007, Ostrowski filed the instant action seeking a judgment against American in the amount of $495,000 along with pre-judgment interest. (Dachs Ex. E at ¶ 15.) On January 21, 2010 plaintiff moved, and on February 12, 2010 defendant cross-moved, for summary judgment.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.     Entry of Judgment**

New York State Insurance Law § 3420(a)(2) provides:

> A provision that in case judgment against the insured or the insured's personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

N.Y. INS. LAW § 3420(a)(2). Under the common law, an injured person possessed no direct cause of action against the insurer of a tortfeasor due to a lack of privity of contract. *See Lang v. Hanover*, 3 N.Y.3d 350, 353-54 (2004). Thus, "if the insured was insolvent, so that the person injured or the estate of one killed was unable to satisfy the judgment against him, the insurer in effect would be released." *Id.* (quoting *Jackson v. Citizens Casualty Co.*, 277 N.Y. 385, 389 (1938)). The purpose of § 3420(a)(2) was to remedy this injustice. Thus, after entry of a judgment against an insured, § 3420 provides an injured party who lacks privity with an insurer a direct cause of action against that insurer to collect the unsatisfied judgment.

The parties disagree as to whether compliance with § 3420 is a condition precedent to *any* direct action against American. Defendant argues that plaintiff lacks standing to commence this action because the aforementioned Confession of Judgment was never entered, and, consequently, notice of said entry was not provided as required by § 3420. Plaintiff counters that he brings this suit as an assignee of Hi-Tower, pursuant to the settlement agreement, rather than as a third-party lacking privity, and therefore, compliance with § 3420 was unnecessary.

To support their respective positions, defendant relies heavily on *Lang v. Hanover*, 3 N.Y.3d 350 (2004),[1] and plaintiff on *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 40 A.D.3d 978 (2d Dep't 2007). The question presented in *Lang* was whether, and under what circumstances, an injured party *lacking privity* could bring a direct action against a tortfeasor's insurance company to recover under the policy. *See Lang*, 3 N.Y.3d at 352. The court held that, pursuant to the plain language of § 3420(a)(2), the injured party must obtain and enter a judgment against the insured tortfeasor before bringing suit against the insurer. *Id.* Once such a judgment is obtained, "the injured party steps into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company." *Id.* at 355. In *Lang*, however, there was no mention of an agreement assigning the insureds' rights against their insurance company to the injured party. Thus, *Lang* is not dispositive.

In *Westchester*, the insured assigned its rights under its insurance policy with Utica to a third-party lacking privity (Westchester) via a settlement agreement. Thereafter, Westchester initiated a direct action against Utica to collect under the policy. The court held that Westchester, through assignment and subrogation, stood in the position of the insured and was entitled to indemnification from Utica. Although the *Westchester* court did not address the requirements of § 3420, its holding is an implicit recognition that assignment/subrogation is sufficient, without entry of a judgment against an insured, for an injured party to maintain a direct cause of action against an insurer. Like the plaintiff in *Westchester*, Ostrowski, as assignee of Hi-Tower, is no longer a stranger to the underlying insurance policy. It is well settled law that an assignee "stands in the shoes" of the assignor and is subject to all the benefits

---

[1] Defendant also relies heavily on *Henegan v. Merchants Mut. Ins. Co.*, 31 A.D.2d 12 (1st Dep't 1968). *Henegan* merely held that actual payment of an excess judgment rendered against an insured is not a condition precedent to a suit against an insurer, and therefore is inapposite.

5

that could have been asserted against the assignor at the time of the assignment. Thus, it follows that any rights Hi-Tower had against American have inured to Ostrowski.

Courts have held that such assignments are valid and lawful. *See Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.*, 2007 WL 4591989, at *1 (S.D.N.Y. Dec. 18, 2007) (if original policy holder could bring an action, plaintiff as assignee is permitted to do the same); *see also Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 403 (2d Cir. 2000) ("assignment of the defendant's bad faith claim to the plaintiff in a personal liability suit is the ordinary mechanism for pursuing such claim against the insurer, usually in exchange for a covenant not to execute on the judgment") (citations omitted); *Home Depot U.S.A., Inc. v. National Fire & Marine Ins. Co.*, 55 A.D.3d 671, 673 (2d Dep't 2008) (holding defendant failed to support its contention that such an assignment was prohibited by § 3420). Thus, it follows that plaintiff was free to commence this action against American, and plaintiff's failure to enter the Confession of Judgment does not bar this action. Accordingly, defendant's motion for summary judgment on this ground is denied.

### C. Timeliness of Disclaimer

Defendant notified Hi-Tower of its decision to disclaim coverage on April 23, 2004,[2] fifty-two days after receiving notice of claim on January 28, 2004. The parties disagree as to whether this notice violates New York Insurance Law § 3420(d), which mandates that an insurer seeking to disclaim liability must "give written notice as soon as is reasonably possible . . . to the insured and injured person or any other claimant." N.Y. INS. LAW § 3420(d).

The New York State Court of Appeals has measured the timeliness of an insurer's notice of disclaimer from the point in time when the insurer first learned of the grounds for disclaimer. *First Fin. Ins. Co. v. Jetco Contr. Corp.*, 1 N.Y.3d 64, 68-69 (2003). "The question of

---

[2] The parties agree that Apex's letter dated April 23, 2004, served as a disclaimer notice to Hi-Tower. (Def.'s Local Rule 56.1 ¶ 20; Pl.'s Mem. in Opp'n to Def.'s Summ. J. Mot., at 4.)

6

unreasonableness becomes a question of fact, or if extreme, of law, depending upon the circumstances of the case which make it reasonable for the insurer to take more or less time to make, complete, and act diligently on its investigation of its coverage or breach of conditions in its policy." *Allstate Ins. Co. v. Gross*, 27 N.Y.2d 263, 270 (1970); *see also Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1030 (1979) (the term "as soon as is reasonably possible" is a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay.) Should the delay in notice be found unreasonable as a matter of law, the insurer is precluded from effectively disclaiming liability.

Under New York law "it is clear that insurers are afforded the opportunity to investigate an insured's claim in order to determine whether coverage is appropriate." *N.Y. University v. First Fin. Ins. Co*., 322 F.3d 750, 754 (2d Cir. 2003). Indeed, an insurer's "need to conduct such investigations in a thorough manner constitutes a sufficient reason for delayed notification." *Id.*; *see also 2540 Assoc. Inc. v. Assicurazioni Generali*, 271 A.D.2d 282 (1st Dep't 2000). However, this time afforded to the insurer is not simply an invitation for frivolous delay as it is the insurer who bears the burden of justifying the delay. *See N.Y. University*, 322 F.3d at 754. A delay will be found unreasonable in situations where the additional investigation was found to have no bearing on the initial reasons for denial of coverage and, quite obviously, when no reason at all has been given for the delay. *See McGinnis v. Mandracchia*, 291 A.D.2d 484 (2d Dep't 2002).

Plaintiff maintains that Apex should have known of the possible grounds for disclaimer on January 28, 2004, upon receipt of Hi-Tower's claim. (Pl.'s Mem. in Supp of Summ. J. Mot., at 7.) However, the grounds for disclaimer were not immediately obvious from Hi-Tower's January 28, 2004 letter. (*See* Dachs Aff. Ex. L.) Defendant had to conduct an investigation in order to determine whether Hi-Tower was an additional insured of ENY. The extent of Apex's

7

investigation is well documented. Defendant maintains that it first learned of a potential policy violation on or around March 2, 2004, when Chang prepared a memo to supervisor Richard A. Jurczyk. (Dachs Aff. Ex. M.) Chang's memorandum to Jurczyk triggered a letter to coverage counsel seeking examination of this legal issue and guidance on possible courses of action. Subsequently, coverage counsel prepared a comprehensive six-page memorandum discussing these legal issues. (*See* Dachs Aff. Ex. O.); *see General Ins. Co. of America v. City of New York*, 2005 WL 3535113, at *5 (S.D.N.Y. Dec. 23, 2005) (approximately 54-day delay not unreasonable when insurer investigated whether a third party was an additional insured; case was sent to outside counsel for a legal opinion.). As defendant notes in its papers, the disclaimer notice was sent eight (8) days after the receipt of coverage counsel's letter rendering their opinion. (Def.'s Mem. in Opp'n to Summ. J. Mot., at 5). The delay must be viewed in light of the insurer's "prompt, diligent, and good faith investigation of the claim." *Structure Tone v. Burgess Steel Prods. Corp.*, 249 A.D.2d 144, 145 (1st Dep't 1998). The defendant needed time to investigate an issue that went to the crux of its disclaimer and, therefore, its notice was not unreasonable as a matter of law. *See Hartford Ins. Co.*, 46 N.Y.2d at 1030 ("It is only in the *exceptional case* that it may be decided as a matter of law.") (emphasis added). Accordingly, plaintiff's motion for summary judgment on this ground is denied.

  **D. Breach & Materiality**

Defendant argues that Hi-Tower breached the Warranty section of the policy by failing to have ENY name it as an "additional insured" under ENY's own insurance policy. The Warranty section states, in part:

> The Named Insured requires that all contractors maintain commercial general liability insurance issued by an "A" rated or better domestic carrier on the following terms:
> a. Limits of Insurance equal to or greater than the limits provided by this policy;

  b. Coverage at least as broad as the Insurance coverage afforded by this policy
  c. Contractual liability coverage, including but not limited to tort liability assumed in a written contract; and
  d. Coverage for the Named Insured as an additional insured.

(Dachs Aff. Ex. J at 128.)

  The parties seem to agree that the breach determination centers around one critical question: whether ENY was Hi-Tower's sub-contractor. However, the actual relationship between Hi-Tower and ENY is unclear. Moses Fischman, principal of ENY, testified at a deposition in 2008 that Hi-Tower hired ENY to perform the plumbing work at the building site. (Kovner Aff. Ex. A. at 7-10.)[3] Conversely, Jacob Katz, President of Hi-Tower, asserted in an affidavit that no contract was entered into between Hi-Tower and ENY to perform plumbing work at the premises. (Dachs Aff. Ex. G.) Moreover, Fischman himself wrote to Hi-Tower's attorney on May 6, 2004, and stated that he was hired by the Congregation to do plumbing work on the building. (Dachs Aff. Ex. I.) Fischman also testified that the checks he received in payment for his services were signed by the Congregation and perhaps he was hired by "a combination of both." (Kovner Aff. Ex. A at 44-46.) There is a genuine issue of material fact as to whether ENY was Hi-Tower's sub-contractor, and therefore summary judgment on this ground is denied.

  Plaintiff argues that, assuming there was a breach, defendant is unable to establish the breach was material as a matter of law[4] because, even if Hi-Tower had been named as an additional insured under ENY's policy, no coverage would have been provided by American.

---

[3] The fact that the deposition transcript is unsigned does not preclude its consideration for purposes of this decision.

[4] Section 3106(b) of the New York State Insurance Laws provides that breach of a warranty does not defeat recovery under an insurance contract unless the breach materially increases the risk of loss. *See Continental Ins. Co. v. RLI Ins. Co.*, 161 A.D.2d 385, 387 (1st Dep't 1990). The burden is on the insurer to show materiality.

9

The Employee Exclusion provision of the instant policy excludes liability coverage for bodily injury to:

> (1) An "employee" of any insured arising out of and in the course of employment by any insured; . . .
> This exclusion applies:
> (1) Whether any insured may be liable as an "employer" or in any other capacity.

(Dachs Aff. Ex. J at 104.) Plaintiff contends that he and ENY constituted an "employee" and "insured," respectively, under this provision, thereby excluding coverage for bodily injuries sustained by plaintiff during the course of his employment with ENY. Plaintiff further contends that, by failing to disclaim on this ground, defendant has waived its right to do so. *See General Acc. Ins. Group v. Cirucci*, 46 N.Y.2d 862, 864 (1979) ("the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated.").

As an initial matter, it is clear that the phrase "any insured" refers only to the named insureds under a policy. *See Shelby Realty v. National Surety Corp.*, 2007 WL 1180651, at *4 (S.D.N.Y. Apr. 11, 2007). Thus, contrary to plaintiff's contentions, ENY cannot be considered an insured under the policy. Even if ENY could be considered an insured under the policy, however, the "Employee Exclusion, [when] read in conjunction with the Separation of Insureds Clause, does not relieve [defendant] of its obligation to indemnify" Hi-Tower. *Id*. The "Separation of Insureds" clause of the policy, in pertinent part, provides:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the First Named Insured, this insurance applies:
> a. As if each Named Insured were the only Named Insured; and
> b. Separately to each insured against whom a "claim" is made or "suit" is brought.

(Dachs Aff. Ex. J at 115.) The "Separation of Insureds Clause limits our reading of the Employee Exclusion to individual insureds, as though each is the only insured under the policy. Thus, the Employee Exclusion does not apply to [Hi-Tower] unless one of [Hi-Tower's] employees is injured during the course of his employment. Since [Ostrowski] worked for [ENY] and not for [Hi-Tower], his employment is not relevant to [Hi-Tower's] coverage." *Shelby Realty*, 2007 WL 1180651, at *4. As the *Shelby* court recognized, this reading makes practical sense. "The Employee Exclusion recognizes that general liability coverage is unnecessary for an employer whose employee is injured in the course of his employment since the workman's compensation system (and the required workman's compensation insurance coverage) covers such an injury. However, a non-employer . . . needs general liability coverage if sued by someone else's employee." *Shelby Realty*, 2007 WL 1180651, at *4 (citations omitted). Plaintiff was an employee of ENY—not Hi-Tower—and thus Hi-Tower would need coverage if sued by plaintiff. Therefore, plaintiff's argument that the alleged breach of the Warranty would not have materially increased the risk of loss is without merit,[5] and his motion for summary judgment on this ground is denied.

  E.  **Reasonableness of the Settlement & Voluntary Payment**

When an insurer declines coverage, "the insured may settle with third parties without prejudicing its rights against the insurer, so long as the settlement is made 'in good faith.'" *Amalgamet, Inc. v. Underwriters at Lloyd's*, 724 F. Supp. 1132, 1142 (S.D.N.Y. 1989) (quoting *Bunge Corp. v. London & Overseas Ins. Co.*, 394 F.2d 496, 497 (2d. Cir. 1968)). In order to recover the settlement amount from the insurer, the insured need not show "actual liability to the

---

[5] Plaintiff's reliance on *Richner Development, LLC v. The Burlington Ins. Co.*, 2009 N.Y. Misc. LEXIS 5221 (N.Y. Sup. Ct. 2009), *Chinbay v. Avalon Bay Communities, Inc.*, 06-CV-1908, Docket Entry No. 79 (E.D.N.Y. Sept. 26, 2008), and other similar cases is misplaced. None of those cases interpreted an Employee Exclusion in light of a Separation of Insured's Clause.

party with whom it has settled so long as a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured]." *Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1091 (2d Cir. 1986) (internal quotation marks omitted).

On the facts known to Hi-Tower at the time of settlement, Hi-Tower had potential liability to Ostrowski. While it is certainly possible that Hi-Tower could have exonerated itself of any liability to Ostrowski by proving that it was a mere "construction manager" at the building site, as noted above, the role Hi-Tower played at the site remains disputed. Moreover, the record indicates that the estimated settlement ("$1,000,000 to $1,500,000") and verdict values ("$2,500,000") were quite large and dwarf the ultimate confession of judgment amount. (Dachs Aff. Ex. V.) As the attorneys retained to defend Hi-Tower indicated: "a settlement on either of those terms ($400,000 or $500,000 confession of judgment and assignment of insured rights to insurance policy) is a reasonable settlement in light of the plaintiff's serious injuries . . . ." (Dachs Aff. Ex. Z.)

Defendant has not presented any evidence that the settlement with Ostrowski was made in bad faith. Nor has defendant cited any evidence, such as competing jury verdicts or settlement abstracts, indicating that the confession of judgment amount represented an unreasonable settlement. Instead, defendant merely notes that plaintiff's demand to Hi-Tower was $400,000, and, therefore, according to defendant, plaintiff would have settled for less than that amount, thereby establishing a genuine issue as to the reasonableness of the $495,000 confession of judgment. However, the record clearly indicates that the smaller sum was only acceptable to Ostrowski as a cash payment, whereas Ostrowski demanded $500,000 in contemplation of the

12

confession of judgment and assignment of rights against American. (Dachs Aff. Ex. Z.) In short, the reasonableness of the settlement amount has been established, it did not constitute a "voluntary payment"[6] by Hi-Tower, and can therefore provide no basis for disclaimer. Thus, plaintiff's motion for summary judgment on this ground is granted and defendant's is denied.

## F. Equitable Estoppel

Plaintiff argues[7] that defendant should be estopped from disclaiming coverage because it assumed the defense of the action for several years without "moving forward on its threat to disclaim." (Pl.'s Mem. in Supp of Summ. J. Mot., at 17.) It is unclear what plaintiff means by "moving forward," or how this has prejudiced him. What is clear, however, is that, where an insurer defends an action on behalf of an insured, without asserting a known defense to coverage or reserving its rights to do so, it is estopped from thereafter disclaiming coverage. *See Schiff Assoc. v. Flack*, 51 N.Y.2d 692, 699 (1980). Defendant's letter dated April 23, 2004 was in fact a notice of disclaimer and reservation of rights. Thus, this argument is rejected.

Plaintiff also argues that defendant should be estopped because it failed to notify Hi-Tower that it had a right to obtain counsel of its choice in view of American's conflicting interest in the matter. To support his contention, plaintiff cites to cases where an insurer faces liability on multiple grounds. *See Public Service Mut. Ins. Co. v Goldfarb*, 53 N.Y.2d 392 (1981) (potential conflict of interest where insurer is liable for compensatory damages but not punitive damages; defendant entitled to independent counsel); *Elacqua v. Physicians' Reciprocal Insurers*, 21 A.D.3d 702 (3rd Dep't 2005) (conflict of interest in representing three plaintiffs where defendant insurer disclaimed some, but not all, of the malpractice claims against the

---

[6] The cases cited by defendant in this regard are distinguishable. For example, most deal with indemnification arising out of the insured/insurer relationship.

[7] The cases cited by plaintiff on this point are distinguishable. For example, in most of the cases late disclaimer by the insurer prejudiced the insured.

plaintiff). Indeed, the Court of Appeals reaffirmed the proposition that "where an insurer may face liability based upon some of the grounds for recovery asserted but not upon others, the insured defendant is entitled to be represented by an attorney of his or her own choosing at the expense of the insurer." *See Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888-89 (3rd Dep't 2008). Plaintiff offers no explanation of why or how American's interest in defending the lawsuit was in conflict with Hi-Tower's interests, or how they were provided compromised representation. Accordingly, defendant is not equitably stopped from disclaiming coverage, and plaintiff's motion for summary judgment on this ground is denied.

### III. Conclusion

Consistent with the discussion above, the court grants plaintiff's motion in part (reasonableness of the settlement amount) and denies defendant's motion in its entirety. Genuine issues of material fact exist regarding whether ENY was Hi-Tower's subcontractor and whether defendant timely issued its disclaimer notice. As such, this matter is hereby referred to U.S. Magistrate Judge Viktor V. Pohorelsky for the resolution of any remaining pre-trial matters.

SO ORDERED

DATED:	Brooklyn, New York
	September 30, 2010

_____/s/_____
DORA L. IRIZARRY
United States District Judge